IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

PEGGY S. WALDON, JAMES
CHARLES WALDON, MARILYN SMITH,

        Plaintiffs,

    v.                          Case No. 11-4060-KHV-KGS

GRANT DAVIS,
        Defendant.

## MEMORANDUM AND ORDER

This is a companion case to <u>Wille v. Davis</u>, Case No. 11-4121 where the court recently granted summary judgment on the basis of the statute of limitations. This case is now before the court upon defendant's motion for summary judgment which also raises a statute of limitations argument. The parties appear to agree that this case is not distinguishable from the <u>Wille</u> case. The court concurs and shall grant summary judgment on the grounds that this case was untimely filed. The court's reasoning follows and shall track the format and text of the <u>Wille</u> order in substantial part.

This is an action alleging legal malpractice. Plaintiffs allege that because of defendant's negligence, fraud and breach of fiduciary duty during the settlement of a case, plaintiffs' legal interests lost settlement value. The claims which were

settled asserted that two major drug companies failed to take measures to prevent chemotherapy drugs from being diluted by a pharmacist. Hundreds of cases were brought by other plaintiffs with similar claims and were settled according to a "Global Settlement Agreement."

I.  SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir.) cert. denied, 537 U.S. 816 (2002). Such a showing may be made with citation "to particular parts of materials in the record, including depositions, documents,... affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials." FED.R.CIV.P. 56(c)(1)(A). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). The moving party may demonstrate an absence of a genuine issue of material fact by pointing out a lack of evidence for the other party on an essential element of that party's claim.

2

Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th
Cir. 2000)(quoting Adler, 144 F.3d at 671).

II. UNCONTROVERTED FACTS

The following facts are considered uncontroverted for the
purposes of defendant's summary judgment motion.

A.   The suit against Eli Lilly and Bristol-Myers and its
settlement

On August 22, 2002, defendant's law firm filed an action in
state court in Jackson County, Missouri on behalf of plaintiffs,
as heirs of Ida Waldon, against the pharmacist Robert Courtney,
Eli Lilly and Company and Bristol-Myers Squibb Company.   Ida
Waldon died from cancer on July 2, 2001.   The lawsuit alleged
that Ida Waldon was harmed because she received diluted
chemotherapy medication.   Plaintiffs are surviving children of
Ida Waldon - - Peggy Waldon, James Waldon and Marilyn Smith.

In November 2002, each plaintiff signed a disclosure of
global settlement with Eli Lilly and Bristol-Myers.   The
disclosure document stated that there were over 300 separate
lawsuits and that defendant's law firm represented the majority
of the plaintiffs in those lawsuits.   It further stated that Eli
Lilly and Bristol-Myers were making a joint settlement offer to
resolve all of the cases and set aside money for future cases
filed against the companies.   The disclosure makes reference to
the settlement agreement.   By signing the disclosure, plaintiffs

represented that they understood they had the right to "opt out" of the settlement agreement and to pursue their claims separately. They also represented that they understood that their right to receive funds would be determined by a Special Master according to the terms of the settlement agreement. Under those terms, a settlement fund of not less than a specified amount or more than a specified amount would be established, with the exact amount to be determined through binding arbitration. Tilzer v. Davis, Bethune & Jones, LLC, 204 P.3d 617, 620 (Kan. 2009). They further acknowledged that Eli Lilly and Bristol-Myers each offered Georgia Hayes (one of the plaintiffs bringing a similar case) a separate settlement of approximately $1.45 million to resolve her case and Georgia Hayes would not be participating in the distribution of funds by the Special Master. Trial had started in Georgia Hayes' case when the global settlement was reached.

Also in November 2002, plaintiffs each signed a release and settlement agreement which stated that they understood the process by which settlement amounts would be determined by the Special Master and acknowledged that they had agreed to accept the settlement amount determined by the Special Master as a full and complete compromise of their claims.

On May 20, 2003, the Special Master Committee awarded $203,821.69 as compensation for the injuries of Ida Waldon.

This sum, minus attorney's fees, was allocated among the three plaintiffs, as acknowledged by plaintiff Peggy Waldon on July 10, 2003.

B.   The Tilzer case

Rita Tilzer was another client of defendant with a case which was settled as part of the global settlement with Eli Lilly and Bristol-Myers.  She died prior to the settlement and her husband and children were substituted as plaintiffs.  The Tilzer plaintiffs opted into the settlement agreement, but objected to the award recommended by the Special Master.  A motion to enforce the settlement and a motion to enforce defendant's attorney's lien were filed in Missouri state court in late 2003.  Also in late 2003, the Tilzer plaintiffs filed a legal malpractice counterclaim (later withdrawn) against defendant in Missouri state court.  They also filed a separate malpractice lawsuit against defendant in Kansas state court in April 2004.  The malpractice action alleged that the global settlement was an aggregate settlement and that defendant had failed to comply with the disclosure requirements of the Missouri Rules of Professional Conduct, specifically Rule 4-1.8(g).[1]

---

[1] This rule provides:  "A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client gives informed consent, in writing signed by the client.  The lawyer's disclosure shall include the existence

The _Tilzer_ plaintiffs lost at the district court level in Kansas, but prevailed before the Kansas Supreme Court in a decision dated April 3, 2009.  The court decided that "the terms of the Global Settlement contained all the important features of an aggregate settlement" and that "[r]ather than establishing a non-aggregate settlement, the unavailability of the information required to be disclosed by Rule 4-1.8(g) simply corroborated that it was an aggregate settlement and rendered it impossible for [defendant Davis] to obtain an informed consent under the rule." _Tilzer_, 204 P.3d at 629.  The mandate was issued on June 5, 2009.  Defendant Davis petitioned the United States Supreme Court for review, which was denied on November 2, 2009.  _Davis v. Tilzer_, 558 U.S. 992 (2009).

The pleadings and proceedings in the _Tilzer_ case were under seal and restrictions were ordered to prevent the Tilzers from contacting other clients of defendant.  After the Kansas Supreme Court's decision, there was continued opposition by defendant to legal efforts by the Tilzers' attorneys to obtain permission to contact other clients of defendant in the diluted drug cases.  On December 2, 2009, the Tilzers were given permission to contact defendant's clients.  Counsel for the Tilzers (who are now counsel for plaintiffs and filed this case for plaintiffs) contacted a limited number of defendants' clients, but were not

and nature of all the claims or pleas involved and of the participation of each person in the settlement."

6

aware of the Waldon family until mid-July 2010. Counsel's efforts to contact the Waldon family were not successful until Spring 2011. This is when plaintiff Peggy Waldon first became aware of the Tilzer case and legal actions being taken against defendant regarding the global settlement. For the purposes of this order we assume the other plaintiffs did not acquire knowledge of the Tilzer case or other legal actions prior to Spring 2011.

III.   THE COMPLAINT IN THIS CASE

This case was filed on June 15, 2011. Plaintiffs allege: that they were represented by defendant along with approximately 80 other persons and families with claims against Eli Lilly and Bristol-Myers; that defendant made aggregate settlement demands without advising his clients, including plaintiffs; that Georgia Hayes' case, as the first case filed, was selected to go to trial first among all of the cases; that Georgia Hayes received much more in settlement than Ida Waldon; that defendant strongly recommended the global settlement agreement; that defendant settled plaintiffs' damages claims for less than they were worth; that defendant acted to conceal from plaintiffs and other claimants the specific amounts awarded to all families, how much money was distributed in total to all families, and the criteria and methodology used to determining the awards; that defendant failed to disclose serious conflicts of interest between

defendant and each of his clients; and that defendant had a strong interest in persuading each of his clients to participate in the global settlement agreement so that he could obtain his aggregate fee.

IV. THE BOOTH AND SCHMITZ DECISIONS

Both sides make reference to the decisions upon motions to dismiss in two companion cases: Booth v. Davis, 2010 WL 4160116 (D.Kan. 8/31/2010) and Schmitz v. Davis, 2010 WL 3861843 (D.Kan. 9/23/2010). These cases were assigned to a different judge at the time the decisions were written and filed. The decisions rejected dismissal upon statute of limitations grounds. The opinions are relevant here, of course, because defendant is making a statute of limitations argument. The statute of limitations argument has not been made previously in this case.

When assessing a statute of limitations argument upon a motion to dismiss, the question before the court is whether "the dates given in the complaint make clear that the right sued upon has been extinguished." Aldrich v. McCulloch Prop., Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980); see also, Dummar v. Lummis, 543 F.3d 614, 619 (10th Cir. 2008)(if pivotal question for application of statute of limitations is apparent on the face of the complaint, the issue may be resolved on a motion to dismiss). As noted in Booth, the court may consider not only the complaint itself, but also attached exhibits and documents

incorporated into the complaint by reference.    Booth, 2010 WL 4160116 at *1 (citing Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)).

In Booth and Schmitz, the court held that the dates provided in the complaint, exhibits, and incorporated documents did not make clear that the plaintiffs' injuries were reasonably ascertainable until April 3, 2009.  In essence, the court found that plaintiffs had not pleaded themselves out of court.  In the decisions, however, the court did make a categorical statement that the lawsuits, having been filed within two years of April 3, 2009, were timely.  Booth, 2010 WL 4160116 at *7; Schmitz, 2010 WL 3861843 at *6.  This was based upon the conclusion that "until April 3, 2009 [the date of the Kansas Supreme Court's Tilzer decision], plaintiffs' injury if any, arising from defendant's handling of the aggregate settlement was not reasonably apparent to them."  Id.

V.   THE PARTIES' ARGUMENTS

Defendant contends that the statute of limitations began running for plaintiff prior to April 3, 2009.  Defendant also contends that, even assuming that plaintiffs' injuries were not reasonably apparent until April 3, 2009, plaintiffs' action is barred by the two-year statute of limitations.[2]   Plaintiffs

---

[2]  It is undisputed by the parties that the Kansas two-year statute of limitations contained in K.S.A. 60-513(a)(4) applies to this case, even though Missouri law governs the substance of plaintiff's claims.

contend that the <u>Booth</u> and <u>Schmitz</u> decisions do not control the outcome here because the court merely held that those cases were timely filed because they were filed within two years of April 3, 2009.   In <u>Booth</u> and <u>Schmitz</u> the court was not faced with a situation in which a plaintiff had not learned of the <u>Tilzer</u> case until 2011.   Plaintiffs argue that plaintiffs' claims accrued in 2011 when they were first contacted by the Tilzers' attorney, William Skepnek.   Plaintiffs also argue that defendant should be estopped from asserting a statute of limitations defense because of defendant's efforts after the <u>Tilzer</u> decision to withhold the identity of clients, such as the Waldon family, and to prevent contact between the <u>Tilzer</u> attorneys and those clients.

VI.   PLAINTIFFS' CAUSE OF ACTION ACCRUED MORE THAN TWO YEARS BEFORE THIS LAWSUIT WAS FILED.

There is no dispute that plaintiffs' cause of action in this case is a tort action.   Under Kansas law, a tort action generally accrues when:   "the act giving rise to the cause of action first causes substantial injury, or, if the fact of the injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of the injury becomes reasonably ascertainable to the injured party. . ."   K.S.A. 60-513(b).

In Pancake House, Inc. v. Redmond By and Through Redmond,
716 P.2d 575, 579 (Kan. 1986), the court reviewed accrual
principles in the context of a legal malpractice action:

> In general, a cause of action accrues, so as to
> start the running of the statute of limitations, as
> soon as the right to maintain a legal action arises.
> The true test to determine when an action accrues is
> that point in time at which the plaintiff could first
> have filed and prosecuted his action to a successful
> conclusion. Johnston v. Farmers Alliance Mutual Ins.
> Co., 218 Kan. 543, 548, 545 P.2d 312 (1976); Yeager v.
> National Cooperative Refinery Ass'n, 205 Kan. 504, 470
> P.2d 797 (1970).
>
> Depending upon the facts and circumstances of each
> case, there are at least four theories which can apply
> to attorney malpractice in Kansas as to when the
> accrual of a cause of action occurs and the statute of
> limitations begins to run. These include:
>
> (1) The occurrence rule—the statute begins to run at
> the occurrence of the lawyer's negligent act or
> omission.
>
> (2) The damage rule—the client does not accrue a cause
> of action for malpractice until he suffers appreciable
> harm or actual damage as a consequence of his lawyer's
> conduct.
>
> (3) The discovery rule—the statute does not begin to
> run until the client discovers, or reasonably should
> have discovered, the material facts essential to his
> cause of action against the attorney.
>
> (4) The continuous representation rule – the client's
> cause of action does not accrue until the attorney-
> client relationship is terminated.

Plaintiffs are relying upon the discovery rule and estoppel
principles to argue that this case is timely filed.  The court
rejects plaintiffs' discovery rule arguments for the following

11

Case 5:11-cv-04060-KHV   Document 149   Filed 08/20/15   Page 12 of 17


reasons.   First, plaintiffs do not identify a material <u>fact</u> essential to their cause of action of which plaintiffs were unaware less than two years before they filed this action.   The "fact" plaintiffs claim they did not know was the Kansas Supreme Court's holding in <u>Tilzer</u>.   That ruling, however, was not a material fact essential to plaintiffs' cause of action in this matter.   Rather, it was a legal holding in a case with similar facts.   Second, persons are presumed to know the law.   So, if a legal holding could be a material fact for the purposes of determining when a cause of action accrued, then plaintiffs should be presumed to have known it when the legal holding was issued.   See <u>Knight v. Myers</u>, 748 P.2d 896, 901 (Kan.App. 1988)(implying constructive knowledge of statute of limitations and therefore of the fact of injury when the statute of limitations passed on a claim); see also, <u>FDIC v. Alexander</u>, 78 F.3d 1103, 1107-08 (6th Cir. 1996)(applying Ohio law, constructive knowledge of facts, not actual knowledge of their legal significance, starts the limitations period running).

It is undisputed that plaintiffs were aware of the terms of their settlement with Eli Lilly and Bristol-Myers.   They were also aware in 2003 that the money they received in settlement was vastly less than the amount received by Georgia Hayes.   They were aware that it was a global settlement and that a large number of plaintiffs would divide a fixed amount of money.

Further, they knew what defendant told them regarding the settlement. The court believes there is no material issue of fact to dispute that plaintiffs were aware of the facts essential to their cause of action more than two years prior to filing this lawsuit.

VII. THERE IS AN ABSENCE OF EVIDENCE TO SUPPORT PLAINTIFFS' CLAIM OF EQUITABLE ESTOPPEL.

The court is also convinced that there is no material fact issue to support plaintiffs' claim of estoppel. In Kansas, equitable estoppel exists when a party by its acts, representations, admissions, or silence when it had a duty to speak, induced another party to believe certain facts existed upon which that party detrimentally relied and acted. Rockers v. Kansas Turnpike Authority, 991 P.2d 889, 894 (Kan. 1999)(quoting United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc., 561 P.2d 792 (1977)); Turon State Bank v. Bozarth, 684 P.2d 419, 422 (Kan. 1984)(also quoting Wild West Plymouth). Estoppel by silence requires an intent to mislead "or at least a willingness that others should be deceived. . . ." Turon State Bank, 684 P.2d at 423 (interior quotation omitted). Plaintiffs have the burden of proving the facts in support of equitable estoppel. See Rockers, 991 P.2d at 894.

Plaintiffs do not allege that defendant made a representation, action or admission upon which plaintiffs relied. Nor do plaintiffs allege that they relied upon defendant's silence to their detriment. Instead, plaintiffs assert that defendant should be estopped from alleging a statute of limitations defense because he opposed and thereby delayed the disclosure of plaintiffs' names (among other names) to a third party – the Tilzers' and their counsel – and because he opposed and delayed contact by the Tilzers' counsel with his former clients. Of course, the Tilzers' counsel were not representing plaintiffs when these actions occurred.

Plaintiffs cite one case in support of their estoppel claim, Freebird, Inc. v. Merit Energy Co., 883 F.Supp.2d 1026 (D.Kan. 2012). In Freebird, the plaintiff was a royalty owner who alleged that an oil lease operator failed to pay or underpaid gas royalties. The plaintiff claimed the statute of limitations should be tolled on the basis of equitable estoppel because the oil lease operator engaged in fraudulent concealment by failing to include relevant information on the check stubs for royalty payments. The court held that tolling did not apply because the defendant's "mere silence" without "actual artifice" was not sufficient to establish fraudulent concealment, and there was sufficient information given to the plaintiff that with due diligence it could have discovered the facts necessary

to bring its cause of action.   Thus, the result in <u>Freebird</u> does not support plaintiffs' tolling claim.

Nor do we find support for equitable estoppel in <u>Freebird's</u> legal analysis for the following reasons.   First, <u>Freebird's</u> analysis of the doctrine of "fraudulent concealment" does not address whether opposition to disclosing information to a <u>third party</u> (who will use the information to contact a plaintiff) should be considered an act of concealment toward a plaintiff. Second, <u>Freebird</u> involved the alleged nondisclosure of <u>material facts</u> giving rise to a cause of action, i.e., financial information relating to the calculation of gas royalties.   In the case at bar, the nondisclosure of the <u>Tilzer</u> ruling is not the concealment of a material fact giving rise to a cause of action.   Instead, it is the alleged secreting of a published legal ruling in favor of a cause of action which was filed in 2004.[3]  This distinction is important for, as the court stated in <u>Freebird,</u> when considering a claim of fraudulent concealment, the object of concealment is the <u>facts</u> underlying the cause of action.   <u>Id.</u> at 1036 ("[t]he question is whether there was 'a design to prevent the discovery of the facts which gave rise to the action, and whether the act operated as a means of concealment'")(quoting <u>Friends Univ. v. W.R. Grace & Co.</u>, 608 P.2d 936, 941 (Kan. 1980)).   Finally, as in <u>Freebird</u>, plaintiffs

_____

[3] The nondisclosure of plaintiffs' names to the Tilzers' attorney is also not the concealment of a fact material to plaintiffs' cause of action.

here have not shown that due diligence would have failed to lead them to discover their claims, even if the Tilzer decision is considered to contain "material facts" to his cause of action. In Freebird, the court remarked that a "party seeking to toll the statute of limitations . . . [must] explain why due diligence did not lead or could not have led to the discovery of the facts and cause of action." Id. at 1037. The court found that with due diligence the royalty owner in Freebird could have obtained relevant information by asking for payment and deduction information pursuant to state law. Id. In the case at bar, plaintiffs have failed to allege or show facts demonstrating that with due diligence plaintiffs could not have learned of the Tilzer case.

In sum, plaintiffs do not allege that defendant concealed material facts underlying their cause of action from plaintiffs. Plaintiffs have not alleged facts showing that defendant's statements or silence were motivated by an intent or willingness to deceive plaintiffs. There is also no showing of reliance by plaintiffs upon defendant's statements, or misrepresentations by defendant, or silence from defendant when there was a duty to speak. The court concludes that critical elements of equitable estoppel cannot be proven by plaintiffs.

VIII.   CONCLUSION

16

In conclusion, there is no triable issue of material fact barring the finding that plaintiffs' claims are untimely filed. More than two years before plaintiffs filed this lawsuit, plaintiffs were aware, either actually or constructively, of the essential facts which would make their injury by defendant's alleged misconduct reasonably ascertainable. And, plaintiffs have not presented a material fact issue which would support a trial on the question of equitable estoppel. For these reasons, defendant's motion for summary judgment (Doc. No. 120) is granted. The defendant's recently filed "Second Motion for Summary Judgment" (Doc. No. 145) is hereby denied as moot.

**IT IS SO ORDERED.**

**Dated this 20<u>th</u> day of <u>August</u>, 2015.**

<u>s/KATHRYN H. VRATIL</u>
**KATHRYN H. VRATIL**
**UNITED STATES DISTRICT JUDGE**